UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 04-10156-WGY

**UNITED STATES OF AMERICA**

**v.**

**JOHN CHU**

MEMORANDUM AND ORDER ON GOVERNMENT'S
MOTION FOR DETENTION

JULY 8, 2004

BOWLER, Ch.U.S.M.J.

On or about May 6, 2004, defendant John Chu (the

"defendant") was arrested in Los Angeles pursuant to a Criminal

Complaint, issued in this district on the same day, charging that

the defendant and Zhu Zhaoxin (codefendant "Zhu") "did

unlawfully, willfully and knowingly combine, conspire,

confederate and agree with each other and with one or more

persons, known and unknown, to commit offenses against the United

States, to wit: to export defense articles or defense services

designated by the President under 22 U.S.C. § 2778(a)(1) without

a license for such export, in violation of 22 U.S.C. §§

2778(b)(2) and (c)" in violation of Title 18, United States Code,

Section 371.

The defendant had his initial appearance in Los Angeles before the United States District Court for Central District of California on May 7, 2004, at which time the court appointed counsel to represent the defendant. The government moved for detention. The record does state under what provision of the Bail Reform Act, 18 U.S.C. § 3142, the government sought detention.[1] The matter was continued until May 12, 2004, at which time defense counsel moved for a further continuance until the following day.

On May 13, 2004, the defendant waived the issue of identity and elected to have the issue of detention resolved in this district. Thereafter the defendant was removed to the District of Massachusetts.

On May 18, 2004, the Grand Jury in this district returned a one count Indictment charging that the defendant, Zhu and Sunny Bai (codefendant "Bai") did "unlawfully, willfully and knowingly combine, conspire, confederate and agree with one another and with one or more other persons, known and unknown, to commit offenses against the United States, to wit: to export defense articles or defense services designated by the President under 22 U.S.C. § 2778(a)(1) without a license for such export, in

---

[1] Government counsel appearing before this court indicated that the government is seeking detention on the sole basis of risk of flight. 18 U.S.C. § 3142(f)(2)(A)

violation of 22 U.S.C. § 2778(b)(2)(c)."

The defendant had his first court appearance in this district on May 26, 2004. He was represented by court appointed counsel, who requested to continue the detention hearing until June 2, 2004. On that day the detention hearing commenced. At the conclusion of the day the hearing was continued, at the request of counsel, until June 4, 2004, for additional testimony. On that date defense counsel moved to continue the matter until June 15, 2004, at which time additional testimony was taken. At the conclusion of the day the matter was continued until June 17, 2004. On that date this court heard argument and took the matter of detention under advisement.

DISCUSSION

I.    A.   Under the provisions of 18 U.S.C. § 3142(c), "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person." Thus, a defendant must be released under the provisions of 18 U.S.C. § 3142(b) or (c), or be detained pending trial under the provisions of 18 U.S.C. § 3142(e) and after a hearing pursuant to 18 U.S.C. § 3142(f). See 18 U.S.C. § 3142(a).

Under 18 U.S.C.§ 3142(e), a defendant may be ordered detained pending trial if the judicial officer finds one of the following three conditions to be true that: (1) by clear and

3

convincing evidence, after a detention hearing under the
provisions of § 3142(f), ". . . no condition or combination of
conditions (set forth under 18 U.S.C.§ 3142(b) or (c)) will
reasonably assure the safety of any other person or the community
. . .;" (2) by a preponderance of the evidence, after a detention
hearing under the provisions of 18 U.S.C. § 3142(f), ". . . no
condition or combination of conditions (set forth under 18 U.S.C.
§ 3142(b) or (c)) will reasonably assure the appearance of the
person as required . . .;" or (3) there is a serious risk the
defendant will flee.[2]  This determination is made by the court at
the conclusion of a detention hearing.

B.   The government is entitled to move for detention in a case
that:

     (1)  involves a crime of violence within the meaning of 18

---

[2] The distinction between the former and the latter are made clear by the very language of 18
U.S.C. § 3142(f).  In the last paragraph of that section, Congress has stated there must be clear
and convincing evidence to authorize pretrial detention when the question is whether any
condition or combination of conditions "will reasonably assure the safety of any other person and
the community . . .." (Latter emphasis added.)  By not requiring that same standard vis a vis an
assessment of risk of flight, it is clear that a lesser standard--i.e., preponderance of the evidence--
applied.  That is precisely the holding in the Second Circuit. See e.g., United States v. Jackson,
823 F.D 4, 5 (D.C.Cir. 1987); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. 1986),
cert. dismissed, 107 S.Ct. 562 (1986); see also United States v. Patriarca, 948 F.2d 789, 792 (1st
Cir. 1991).

U.S.C. § 3156(a)(4);[3]

(2)    involves an offense punishable by death or life imprisonment;

(3)    involves an offense prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the maximum authorized punishment is imprisonment for ten years or more;[4] or

(4)    involves any felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court <u>sua sponte</u> may move for, or set, a detention hearing where there is a serious risk of flight, or a serious risk of obstruction of justice or

---

[3] Section 3156 of Title 18 of the United States Code defines a crime of violence as:
> (A)  an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B)  any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4).

[4] The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense--not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines. See United States v. Moss, 887 F.2d 333, 336-7 (1st Cir. 1989).

threats to potential witnesses.  See 18 U.S.C. § 3142(f).

C.  In determining whether there are conditions of release which will reasonably assure the appearance of the person and the safety of any other person and the community, this court must take into account:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the accused;
>
> (3) the history and characteristics of the person, including--
>
>> (A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
>
> (4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

D.  The burden of persuasion remains with the government to establish "that no condition or combination of conditions will

reasonably assure the appearance of the person as required and the safety of any other person and the community." The burden then rests on the defendant to come forward with evidence indicating that these general findings are not applicable to him for whatever reason advanced. The government must satisfy its position with respect to risk of flight by a preponderance of evidence and with respect to dangerousness by clear and convincing evidence. See supra footnote 3. This court must then weigh all relevant factors [set forth under §3142(g)] and determine whether "any condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." The decision is an individualized one based on all relevant factors. United States v. Patriarca, 948 F.2d 789, 794 (1st Cir. 1991); see United States v. Jessup, 757 F.2d 378, 387-88 (1st Cir. 1985).

Moreover, one may be considered a danger to the community even in the absence of a finding by clear and convincing evidence that the accused will engage in physical violence. Conversely, as noted by the Committee on the Judiciary (Report of the Committee on the Judiciary, United States Senate), on S. 215. 98th Congress, Report No. 98-147 (May 25, 1983):

> The concept of defendant's dangerousness is described throughout this chapter by the term "safety of any other person or the community."

7

> The reference to safety of any other
> person is intended to cover the
> situation in which the safety of a
> particular identifiable individual,
> perhaps a victim or witness, is of
> concern, while the language referring
> to the safety of the community refers
> to the danger that the defendant might
> engage in criminal activity to the
> detriment of the community. The
> Committee intends that the concern about
> safety be given a broader construction
> than merely danger of harm involving
> physical violence.... The Committee
> also emphasizes that the risk that a
> defendant will continue to engage in
> drug trafficking constitutes a danger to
> the "safety of any other person or the
> community."

Id. (Emphasis added; footnotes omitted); see United States v. Patriarca, 948 F.2d 789, 792, n.2 (1st Cir. 1991) (danger to community does not refer only to risk of physical violence); see also United States v. Tortora, 922 F.2d 880, 884 (1st Cir. 1990) (stating danger in context of 18 U.S.C. § 3142(g) not meant to refer only to physical violence); United States v. Hawkins, 617 F.2d 59 (5th Cir.), cert. denied, 449 U.S. 962 (1980) (trafficking in controlled substances).[5]

---

[5] A defendant may be ordered detained as a danger to the safety of another or to the community, however, only if the judicial officer determines that a detention hearing is appropriate under the provisions of 18 U.S.C. § 3142(f)(1)(A) through 3142(f)(1)(D). That is to say, even if a detention hearing is appropriate under 18 U.S.C. § 3142(f)(2)(A) through 3142(f)(2)(B) [for risk of flight or danger of obstruction of justice or intimidation of witnesses], danger to the community is not a basis upon which a defendant may be ordered detained prior to trial, unless the government has moved under 18 U.S.C. § 3142(f)(l), and the judicial officer has determined that a hearing is appropriate under that latter section. See United States v. Ploof, 851 F.2d 7 (1st Cir. 1988).

The issue critical to determining whether to detain a
defendant is therefore, whether, with respect to the defendant,
based on the guidelines set forth supra in part C of this Order,
any condition or combination of conditions of release exist that
will reasonably assure the safety of any person and the
community; and the presence of the defendant.  18 U.S.C. §
3142(e).

II.  The defendant, John Chung-Yi Chu, is 44 years of age.[6]  He
was born in Taiwan on July 26, 1959.  The defendant entered the
United States in 1983 and was naturalized in 1988.  He holds both
a United States passport and a Taiwanese passport.  The defendant
told Pretrial Services that he has traveled to China on 20 to 30
occasions to visit family or for business purposes.  In addition
he noted that he has traveled to Taiwan on five occasions to
visit family.

The defendant's father is deceased.  The defendant's mother
and two of his siblings reside in Torrance, CA.  The defendant
has a third sibling living in New Jersey.

The defendant earned an associate of arts degree in
photography at Los Angeles City College in 1985 and a bachelor of
fine arts at UCLA in 1995.

---

[6] The biographical information in this section is taken from the Pretrial Services report
prepared in the Central District of California and an additional report compiled by Pretrial
Services in this district.

9

In 1983 the defendant married Nancy Chu ("Ms. Chu"). One child was born of this marriage in 1999. In the same year the defendant and Ms. Chu were divorced. Ms. Chu and the couple's child reside in Pasadena, CA. In 1999 the defendant married a woman in China. At the time he was interviewed by Pretrial Services he could only recall his wife's name as "Han." According to the Pretrial Services report, the marriage did not produce any children and the couple was divorced in 1999.[7]

In 2003 the defendant married Yu Mei. No children have been born of this union, which is intact.

For the past 21 years the defendant has resided in the Greater Los Angeles area. According to the defendant, for the past year he has been residing with his current wife at 312 E. Newmark Avenue in Monterey, CA. Prior to moving to Monterey the defendant lived in Los Angeles for one year. Before moving to Los Angeles the defendant lived in Torrance for 15 years.

The defendant told Pretrial Services that at the time of his arrest he was employed as a front desk manager for the Champion Hotel in San Gabriel, CA, where he had been working for eight months at a salary of $1,000 per month. Pretrial Services contacted the Champion Hotel and was told that the defendant was the electrical manager.

---

[7] Upon inquiry by this court at the detention hearing it was established that in 1999 the defendant married Su Ziu Han in Quingtao City, China and one child was born of this union.

10

The defendant's employment history includes working one year as a freelance photographer before going to work at the Champion Hotel.  His other employment includes working as a photographer for the Show Hotel in Monterey Park for one year, six months at Choice Printing in Anaheim, CA and six months at the New Will Color Lab in Los Angeles.

The defendant lists total assets in the amount of $17,700 and liabilities in the amount of $8,000.  The defendant filed bankruptcy in 2001.  The financial statement completed by the defendant does not include a monthly expenditure for rent.  The defendant indicates that he owns a 2001 Chevrolet Cavalier, however there is no indication that the defendant pays for any insurance on this vehicle.

On June 16, 2004, Pretrial Services in this district contacted Ms. Chu telephonically.  Ms. Chu, a naturalized American citizen born in Taiwan, is a nurse employed by Pacific Medical Center Alliance in Los Angeles.  She confirmed that she married the defendant in 1983 in Taiwan and that they were divorced in 1999 in Los Angeles.  They have a five year old son.

Ms. Chu resides in Pasadena with her son in a home which she owns.  She values her home at $400,000 and states that she has $100,000 worth of equity in the property.  When contacted by the Pretrial Services officer in Boston, Ms. Chu indicated that she would be willing to have the defendant reside with her in the

11

event the court releases him.  In addition, she indicated that
she would be amenable to posting the equity in her property to
secure the defendant's release.[8]

III.  The relevant evidence at the detention hearing showed the
following.[9]

The government called Senior Special Agent William J. Argue
("Argue") of the United States Department of Homeland Security,
Immigration and Customs Enforcement.  He testified that he has
been so employed since 1997 and that he formerly served with the
United States Border Patrol and the United States Department of
Commerce.

Argue testified that the defendant's name first appeared on
February 5, 2004, in the course of an investigation relating of
an organization operating in Hong Kong and China involved in
importing illegal goods into China.  The defendant's role was
identified as that of a translator for codefendant Zhu.  Argue
stated that Zhu was identified as the president of a company
known as Hong Kong New Crystal International, based in Hong Kong

---

[8] It should be noted that when interviewed by Pretrial Services in Los Angeles Ms. Chu was
not willing to post her property to secure the defendant's release.

[9] The 58 page Criminal Complaint and the 20 page Indictment summarize the facts, including
the specific defense articles, the cost of the articles and the methods of payment, leading to the
above-captioned charges. Rather than reiterate all of the lengthy details, the Criminal Complaint
and the Indictment are incorporated by reference and this ORDER will only set forth the
testimony offered at the detention hearing.

and Shenzen, China.

In further testimony Argue stated that on February 9, 2004, law enforcement agents, who were functioning in an undercover capacity, met with Zhu and the defendant, who was functioning as a translator for Zhu.  The purpose of the meeting was to negotiate the purchase, sale and export of certain items on the "Munitions List"[10] that the undercover agent ("UC") and Zhu had been discussing.  The discussion at the meeting focused on the purchase of power converters and products manufactured by Vicor, a Massachusetts company, and a company identified as "Triquint." Argue noted that numerous conversations between the defendant and one of the UCs followed.

On April 20, 2004, the UC and the defendant met again.  By that time an undercover company, established for the purpose of the investigation, had received a down payment comprising 30 percent of the purchase price for the Vicor power converters. The defendant was to inspect the products prior to paying the remaining balance.  The defendant was told that export of the products to the People's Republic of China ("PRC") would require an export license which would never be granted.

In further testimony Argue stated that on May 5, 2004, the UC picked up the defendant and Zhu upon their arrival in Boston.

---

[10] The exportation of defense articles on the Munitions List is controlled by the United States Department of State ("DOS").

The defendant arrived from Los Angeles and Zhu arrived from China. A meeting for Zhu to inspect the products was arranged for the following day at a Cambridge office complex. When Zhu arrived at the office complex he indicated that he did not want to meet at the proposed location. The UC, the defendant and Zhu loaded the products into a car rented by Zhu. They went across the street to a Marriott Hotel. Zhu indicated that the hotel was not a satisfactory location and the three proceeded to a restaurant on the Boston waterfront. Before entering the restaurant the defendant and Zhu inspected the products.

Argue testified that the three individuals entered the restaurant. After being seated the UC placed a disguised transmitting device on the table. Chu and Zhu looked at the device. They picked it up and appeared to attempt to disable it. Argue noted that, in fact, they did not disable the transmitting device. Shortly after sitting down at the table two other UCs entered the restaurant and sat down at a nearby table. The defendant and Zhu immediately moved to a more isolated table.

In further testimony Argue stated that following the restaurant meeting the UC took the defendant and Zhu to Boston's Logan International Airport. After walking Zhu to the ticket counter at America West Airlines, the UC departed. Surveillance agents then observed Zhu walk to another airline ticket counter and book a flight to Los Angeles. Then the defendant and Zhu

14

took a flight to Los Angeles, where they were arrested upon landing.

At the time of his arrest the defendant was in possession of two passports. Argue was shown a document, which was admitted as Government Exhibit # 1, which he described as a copy of the first two pages of a passport from the Republic of China (Taiwan), issued to John Chung-Yi Chu on December 2, 2002 in Los Angeles, with an expiration date of December 2, 2012. The passport, which bears a photograph which appears to be a likeness of the defendant, indicates that the bearer was born on July 26, 1959 in Kaoshing City.

Argue was shown a second document, which was admitted as Government Exhibit # 2, which he identified as a copy of the first two pages of a United States passport which was taken from the defendant at the time of his arrest. The passport was issued on January 22, 1998 in Los Angeles in the name of John Chung-Yi Chu with a date of birth of July 26, 1959. It lists "China" as the defendant's place of birth. The photo in the United States passport also appears to be a likeness of the defendant.

On cross examination defense counsel established that on February 5, 2004, the defendant was first identified in the course of the investigation leading to the above captioned charges. Defense counsel also established that Vicor is seeking to have the federal controls on its products transferred from the

15

United States Department of State to the United States Department
of Commerce.

In further cross examination Argue noted that codefendant
Bai was operating out of Hong Kong and China.  Argue acknowledged
that initially Bai did not want the defendant to hear the
discussions regarding traveling wave tubes ("TWTs") or the gyro
chips.  Argue stated that at first Zhu said not to discuss the
TWTs with Chu, but that Bai later authorized the defendant to be
a party to the discussions.

During the course of closing argument the government offered
two additional exhibits.  Government Exhibit # 3 is a copy of all
the additional pages of from the defendant's United States
passport.  A review of the pages indicates that the defendant
traveled extensively commencing immediately after the passport
was issued on January 22, 1998.  Seven days later he visited El
Salvador.  The passport is literally crammed with stamps, many
from Hong Kong, Korea, Taiwan Japan and China.  The passport was
so full that on May 25, 2000, the American Consulate in
Guangzhou, P.R.C., issued a 19 page supplement to provide more
space to accommodate visas, entry and departure stamps, etc.  The
supplementary pages include numerous travel stamps as well as at
least five visas for travel in China.  The most recent visa was
issued on March 25, 2004 and was valid for entry before June 25,
2004.

Government Exhibit # 4 is a Foreigner Residence Permit issued by the People's Republic of China to John Chung-Yi Chu, date of birth July 26, 1959. The document bears two photographs. One photograph is the same photograph that appears on the defendant's United States passport. The document was issued on May 26, 1998 and bears numerous renewal stamps through at least June of 2001. The second photograph on Government Exhibit # 4, which is somewhat blurred, appears to include an adult male, an adult female and two children.

According to the Mandarin interpreter at the detention hearing, the document first lists the occupation of John Chung-Yi Chu as "construction/renovation/decoration." The occupation is changed three times in the document. In 1999 the occupation was changed to "investing and consulting." In 2000 the occupation was changed to "Chief Manager, CRC Consulting" and later in 2000 the name of the company was changed and its business was listed as "manufacturing."

IV. The return of the Indictment in the United States District Court for the District of Massachusetts in this case established the existence of probable cause that the defendant committed the crimes for which he is charged in the Indictment.

The United States has moved for detention pursuant to 18 U.S.C. § 3142 (f)(2)(A). The government must demonstrate only by

17

a preponderance of evidence that the defendant, if released, is a serious risk of flight.

At the time of his arrest the defendant was in possession of a United States passport and a passport from Taiwan as well as a residency permit from China. Since the defendant's United States passport was issued in 1998 the defendant appears to have been traveling on an almost continuous basis. In just over two years the passport had to have a supplement issued because there was no longer any space to document travel.

Although the defendant has ties in the United States, his adopted country, he also has roots in Taiwan and China. He has family members in Taiwan and China and a former wife and a child in China. In addition he appears to have been working in China for the last several years, based on the information set forth in Government Exhibit # 4.

When interviewed by Pretrial Services in Los Angeles the defendant said that for the eight months prior to his arrest he was employed as the front desk manager at the Champion Hotel in San Gabriel, CA. However, Pretrial Services contacted the hotel and was told that the defendant was employed as the electrical manager. The defendant's prior employment history includes freelance work and short term employment. It would appear that during these periods the defendant was doing extensive traveling predominantly in Taiwan, China, Korea, Japan and El Salvador.

18

This court also notes that Nancy Chu, the defendant's ex-
wife, stated that the defendant has lived with her at her
Pasadena residence since July of 2003.  She was unaware that the
defendant reported that he was married and living with his wife
in Monterey Park.  From his financial statement it does not
appear he was paying rent wherever he was living.  This court
also notes that the defendant's financial statement indicates
that he does not pay any child support to Ms. Chu for their five
year child, nor does he support his child in China.

It appears that the defendant was less than candid with
Pretrial Services regarding his residence, his employment status
and his child in China.  This court notes that he made no mention
of working in China, although the Chinese Foreigner Residence
permit lists various occupations for the defendant from 1998
through 2001.

Although the defendant has primarily resided in California
for the last two decades, he has maintained passports in the
United States and Taiwan and a foreign residence in China.  He
was married in China in 1999.  His employment history is sketchy
and it would appear that he was working in China which he failed
to report to Pretrial Services, while purportedly working at
other jobs in the United States.  It appears that he has been
living a somewhat itinerant lifestyle.

In addition, the defendant has been traveling on an almost

19

continual basis since his passport was issued in 1998, despite
having been in bankruptcy in 2001.  From the extent of his travel
it would have been difficult for him to have maintained a full
time job unless it was related to his travel.  The most recent
Chinese visa in the defendant's United States passport, which was
valid until June 25, 2004, would suggest that he was planning to
travel to China after his May 2004 trip to Boston.

This court is not convinced that the defendant will appear
as required.  He is an very experienced traveler who has lived
and worked abroad and who has familial ties in Taiwan and China.
If convicted the defendant faces a lengthy period of
incarceration.  This in itself serves as a motivation to flee.

Based on the totality of the circumstances this court finds
by a preponderance of the evidence that there is no condition or
combination of conditions that will assure the appearance of the
defendant as required.

## V.  Conclusion

The government has satisfied this court, at least by a
preponderance of the evidence, that there is no condition or
combination of conditions that will assure the appearance of the
defendant as required.

Having evaluated the factors set forth in 18 U.S.C. §
3142(g), this court orders the defendant detained subject to the

20

following conditions:

(1)   The defendant be, and he hereby, is committed to the custody of the Attorney General for confinement in a corrections facility, separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2)   The defendant be afforded reasonable opportunity for private consultation with his counsel; and

(3)   On Order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined shall deliver the defendant to an authorized Deputy U.S. Marshal for the purpose of any appearance in connection with a court proceeding.

S/S

**MARIANNE B. BOWLER**
Chief United States Magistrate Judge