UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10156 WGY |
| | ) | |
| JOHN CHU | ) | |
| | ) | |

DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION
IN LIMINE: Re VICOR CORPORATION'S POWER CONVERTER

Defendant John Chu respectfully opposes the government's effort to bar certain evidence relating to Vicor Corporation ("Vicor"). The government mistakenly casts the evidence as bearing on an alleged "past request by Vicor Corporation to have certain military grade DC/DC power converters removed from the United States Munitions List." Government Motion in Limine at 1. Defendant begins by correcting the government's characterizations, as the representations that the Vicor power converters were "listed" on the United States Munitions List ("USML") and that Vicor had sought to "remove[]" them from the list, are factually inaccurate.

First, the government describes the power converters as having been "listed" on the USML. Vicor's DC-DC power converters are not "listed" at all, either by specific description or by manufacturer. Rather, they are included only if they fall within a category of materials regulated under the United States Munitions List ("USML").

Second, Vicor had not sought, as the government alleges, to have the power converters "removed" from the USML. Government Motion in Limine at 1. More accurately, Vicor had filed for Commodity Jurisdiction for its power converters, noting that the items "are not specifically enumerated in the USML." Letter of Sullivan and Lynch, counsel to Vicor, to

Office of Defense Trade Controls, dated October 4, 2002. As the letter makes explicit, Vicor did not view its power converters as being subject to the USML, stating that "[i]n our opinion, the items do not have substantial military capability; nor have the items been specifically designed or modified for military purposes...." Id.

On or about September 15, 2003, the Director of Defense Trade Controls wrote to Vicor that its DC-DC power converters required a license to export, stating the view that they fell within the catchall provision of Category XI(c) of the USML addressing "[c]omponents, parts, accessories, attachments, and associated equipment specifically designed or modified for use with the equipment in paragraphs (a) and (b) of this category, except for such items as are in normal commercial use." 22 C.F.R. 121.1(c) Category XI(c). Vicor contested this initial finding, invoking 22 C.F.R. 120.4(g), which reads as follows:

> A person may appeal a commodity jurisdiction determination by submitting a written request for reconsideration to the Director of the Office of Defense Trade Controls. The Office of Defense Trade Controls will provide a written response of the Director's determination within 30 days of receipt of the appeal. If desired, an appeal of the Director's decision can then be made directly to the Assistant Secretary for Political-Military Affairs.

22 C.F.R. 120.4(g). A copy of Vicor's Request for Reconsideration, filed November 25, 2003, is attached. Notwithstanding the requirement that the ruling be made within 30 days, the Director did not do so during the period relevant to this case (up to May 6, 2004).

Thus, throughout the period charged in Count 2 of the Superseding Indictment, April 20-May 6, 2004, Vicor 's appeal of the preliminary ruling that its power converters fell within the USML was pending and open. Also during the period charged in the indictment, the Director of the Office of Defense Trade Controls failed timely to rule on the appeal of Vicor,

notwithstanding the express provision of 22 C.F.R. 120.4(g).  Now the government, notwithstanding Vicor's contest to the claim that its power converters fell within the USML and also notwithstanding the utter ambiguity of the catch-all provision of the USML under which the power converters were allegedly regulated, contends that defendant should not be able to elicit testimony about Vicor's challenge to the determination of the Office of Defense Trade Controls and that throughout the relevant time period the determination was unresolved.  An added irony -- the government proposes to offer at trial a certificate of the Office of Defense Trade Controls, the office which failed to timely rule on the Vicor contest, to certify that the power converters were regulated under the USML.

The timing of the Vicor challenge to the designation is relevant for additional reasons.  In its proof, the government will seek to show that defendant, while allegedly aiding and abetting co-defendant Zhu Zhaoxin and while translating for him, heard the undercover agent say that it was unlawful to export Vicor's power converters from the United States without a license.  But during the same conversations, co-defendant Zhu Zhaoxin told defendant that the Vicor power converters were "ordinary power converters," which one could "buy reasonably and legally;" that these converters could be "sent to China last year [and] the year before;" that it was "OK last year[,] we could buy it last year;" that "I came here last year.  There was no restriction last year.  There was no control last year;" and that "I bought it [power converters] in zero three (2003)."  Co-defendant Zhu Zhaoxin also expressed disbelief to defendant about the undercover agent's claim that the converters were regulated.

Zhu Zhaoxin's statements were factually true.  Defense counsel proffers, and is prepared to offer testimony, that Vicor sold power converters until October 2003 without seeking end

user information from purchasers, including from purchasers based in Hong Kong and Korea; and that, following the initial decision by the Office of Defense Trade Controls on or about September 15, 2003, Vicor only then registered as a manufacturer of defense articles on October 1, 2003 and only then sought end-user information from purchasers of its power converters. Thus, Zhu Zhaoxin's statements that he bought, and could buy, power converters one year earlier without a license were factually true, and, since Zhu Zhaoxin made these statements to and in the presence of defendant, defendant Chu will elicit these statements as bearing on Chu's state of mind.

Further, Zhu Zhaoxin later told defendant, who translated the statements for the undercover agent, that the market for Vicor power converters would open up by the end of the year; that is, that there would be no restriction on the export of the power converters. As is related above, Vicor at the same time was seeking reconsideration of the preliminary decision of the Director of Defense Trade Controls and was meeting with the Office to have the restriction lifted. Thus, Zhu Zhaoxin's statement that the market would be open was founded in fact, anticipating a favorable ruling for Vicor. Whether Mr. Zhu was entirely accurate in his estimation does not diminish the importance of the jury learning that, in fact, Vicor was contesting the restriction on its sale of converters, making John Chu's reliance on information given by Zhu more reasonable and credible .

At bottom, the government seeks to admit statements by the undercover agent that the export of power converters required a license to export. Simultaneously, it seeks to prevent defendant from showing that the Department of State had not resolved Vicor's appeal, a fact surely relevant to whether the power converters were regulated under the Arms Export Control

Act at the time, and further that Vicor had sold its power converters for years without requiring end-user information from purchasers, a fact corroborative of Zhu Zhaoxin's statements that the power converters had not been restricted. This evidence, including that the power converters had long been sold without restriction, bears on defendant's intent and is admissible. Finally, this information impeaches a claim made by the undercover agent on the tapes that the power converters had "always" been controlled.

    For these reasons, defendant asks this Court to deny the government's motion in limine.

JOHN CHU
By his attorney,

_[signature]_
Charles P. McGinty
 B.B.O. #333480
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA 02110
Tel: 617-223-8061

### CERTIFICATE OF SERVICE

    I, Charles P. McGinty, hereby certify that a true copy of the above document was served upon Assistant United States Attorney Gregory Moffatt by delivery on September 6, 2005.

Charles P. McGinty

## SULLIVAN & LYNCH, P.C.
ATTORNEYS AND COUNSELORS AT LAW
156 STATE STREET
BOSTON, MASSACHUSETTS 02109-2508

JAMES P. SULLIVAN
HERBERT J. LYNCH

THOMAS M. MIASKIEWICZ
JOHN F. MCCARTHY, JR.

TELEPHONE
(617) 723-4488

FAX
(617) 723-2058

November 25, 2003

Director
Center for Defense Trade
Department of State
Bureau of Political Military Affairs
DTC Room H1200, SA-1
2401 E. Street NW
Washington, DC 20037



### REQUEST FOR RECONSIDERATION
### COMMODITY JURISDICTION
### CASE CJ 195-02

Dear Sir:

Pursuant to the provisions of Section 120.4(g) of the International Traffic in Arms Regulations (ITAR) (22 CFR 120.4(g)), on behalf of Vicor Corporation (hereinafter Vicor) of Andover, Massachusetts, I request that your Office reconsider the Determination made in Commodity Jurisdiction Case CJ 195-02, dated September 15, 2003, that Vicor's MI-200™ DC-DC Converters and MI-J00™ DC-DC Converters are defense articles within the purview of Category XI(c) of the United States Munitions List (USML). For your ready reference, I have enclosed a copy of the aforementioned Commodity Jurisdiction Determination and my Submission, dated October 4, 2002, requesting the Determination.

### BACKGROUND

Vicor is a commercial manufacturer of power components. Vicor was founded in 1981. Vicor designs, manufactures, and markets modular, high-density power components and complete configurable power systems used primarily by original

equipment manufacturers (OEMs) in the communications, data processing, industrial control, test equipment, medical, and electronics markets. The major items in Vicor's product line are high-density DC-DC Converters. Vicor markets DC-DC Converters in thousands of combinations of input voltage, output voltage and power levels so as to provide its customers with creative, highly functional and economic solutions to their power systems requirements. Vicor is a publicly traded company and reported Fiscal Year 2002 Net Revenues of $152,591,000; of which 34% was derived from export activities.

In the early 1980s, Vicor developed its hallmark products, the VI-200 and VI-J00 DC-DC Converters. Subsequent, in order to satisfy OEM's needs for commercial-off-the-shelf (COTS) power components that meet stringent environmental standards, Vicor developed its MI Series of DC-DC Converters (i.e. MI-200 and MI-J00 DC-DC Converters).

The Determination in Case CJ 195-02 held that the MI Series DC-DC Converters are "specifically designed for military applications and do not have performance equivalent to Vicor's commercial DC-DC Converters (e.g. input voltage differs)." Following thereon, the Determination stated that the MI Series DC-DC Converters are designated as defense articles under Category XI(c) of the USML.

## ARGUMENT

Category XI(c) of the USML covers components, parts and accessories, attachments and associated equipment specifically designed or modified for use with the equipment in paragraph (a) and (b) of Category XI, except for such items as are in normal commercial use.

2

The essence of the Arms Export Control Act (AECA) and the ITAR promulgated thereunder is that the export and import of defense goods and services must be regulated in order to further world peace and the security and foreign policy of the United States. As evidenced by the qualifying language found in Category XI(c) and throughout the USML, regulatory control within the jurisdiction of the Department of State under the ITAR is limited to those items that have a primary military function or a strong capability of military use. Conversely, "dual use" goods and technologies (items that can be put to use in military applications or have strategic significance) are controlled under the Export Administration Act (EAA).

Vicor's Request for Reconsideration is premised on the fact that the MI Series DC-DC Converters represent minor modification of Vicor's VI Series DC-DC Converters; and were specifically developed in order to present to all Vicor's OEM customers a line of DC-DC Converters that meet recognized standards (MIL standards) for common input voltages and environments. The MI Series DC-DC Converters were not specifically designed nor adapted for military or defense applications. Far to the opposite, the only military benefit is derived from the availability of COTS DC-DC Converters to Defense Department Contractors. Commercial off the shelf procurement is more than an aspiration by the Defense Department but rather a fact of life. Commercial OEMs benefit from COTS procurement because the same products that have been developed to military standards and display the attributes necessary in that environment are available for commercial applications. Vicor's MI Series DC-DC Converters have been purchased by leading companies in various commercial industries; such as Nokia

3

(telecommunications), Honeywell International (civil aviation), International Water Guard (water purification systems).

As stated above, the MI Series DC-DC Converters are the product of minor enhancements to the standard VI Series DC-DC Converters. The following are relevant distinctions:

- MI Series units are modifications of the Commercial VI Series to recenter the input voltage to coincide with domestic and international military standards.

- Construction, processes, components and mechanical features are identical

- The Converter features for the MI Series and the VI Series are identical: remote sense, current limit, OVP, thermal shutdown, logic disable, wide range output adjust and ZCS/ZVS power architecture.

- Offered output voltages are identical: 2, 3.3, 5, 10, 12, 15, 24, 28 and 48 Vdc

- All MI Series Converters have a very close VI Series relative:

| **MI-200, MI-J00 Family** | **VI-200, VI-J00 Equivalent** |
|---|---|
| 18 to 50 Vdc input range<br>100 W max power | 21 to 56 Vdc input range<br>100W max power |
| 100 to 210 Vdc input range<br>100W max power | 100 to 200 Vdc input range<br>100 W max power |
| 125 to 400 Vdc input range<br>100 W max power | 100 to 375 Vdc input range<br>100W max power |
| 100 to 310 Vdc input range<br>100 W max power | 100 to 375 Vdc input range<br>100W max power |

The VI-200 or VI-J00 modules could easily be adapted by the end user to perform the same as the MI-200 or MI-J00 modules.

It is important to note that Vicor's primary competitors in all industries market DC-DC Converters designed to military standards and military applications as COTS

4

suppliers. It is Vicor's understanding that the below-listed competitors are not Registrants under the ITAR and export said articles under the provisions of the EAA. The competitors are:

- Interpoint, a Crane Company
  # 10201 Willows Road
  Redmond, WA 98052

- VPT Inc.
  2801 Commerce Street
  Blacksburg, VA 24063

- Martek Power Abbott, Inc.
  2727 S. La Cienega Blvd.
  Los Angeles, CA 90034

- International Rectifier Inc.
  233 Kansas Street
  El Segundo, CA 90245

- Rantec Power Systems Inc.
  1173 Los Oliros Ave.
  Los Osos, CA 93402

- Powercube, a Natel Company
  9340 Owensmouth Avenue
  Chatsworth, CA 91311

I have enclosed marketing information from these companies. The wide marketing of military standard DC-DC Converters supports Vicor's claim that these items are in normal commercial use.

## SUMMARY

Classification under USML Category XI(c) requires that the article be specifically designed or modified for the defense articles listed in Category XI(a) and (b); and further not be in normal commercial use. Vicor asserts that the MI DC-DC Converters are not specifically designed or modified for military equipment and further have normal

commercial use. The MI DC-DC Converters articles are commercial-off-the-shelf electronic components. The items are marketed by Vicor to original equipment manufactures for use in the manufacture of electronic articles for application in many industries. The subject items are not defense articles as defined by the USML. Jurisdiction over these articles rests with the United States Department of Commerce as previously determined by that Agency in Classification Inquiry, dated October 30, 2002, enclosed herewith.

Please advise me if additional information is necessary or if you have any questions regarding the involved items. Thank you for your attention to this Request for Reconsideration.

Sincerely yours,

**SULLIVAN & LYNCH, P.C.**
**Counsel to**
**Vicor Corporation**

Herbert J. Lynch

Enclosures

HJL\Vicor\VicorRequest

6