UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10156 WGY |
| | ) | |
| JOHN CHU | ) | |

DEFENDANT'S MOTION FOR RECONSIDERATION OF THE RULING
ADMITTING THE STATE DEPARTMENT CERTIFICATE AND
ATTACHED LETTER AND FOR JUDGMENT OF ACQUITTAL

Defendant John Chu respectfully moves for reconsideration of the ruling admitting the certificate and attached letter, and seeks judgment of acquittal.

1. Admission of the Certificate and Attached Letter

During the government's case, the Court excluded the document containing the State Department certificate and the attached letter of Acting Managing Director Dixon. The Court reversed itself at the close of the government's evidence. Defendant objected and here more fully articulates his objections.

The proffered exhibit is in two parts. The first is a page affirmed by the Secretary of State that "Michael T. Dixon, whose name is subscribed to the document hereunto annexed, was at the time of subscribing the same Acting Managing Director, Directorate of Defense Trade Controls ... Department of State..., and that full faith and credit are due to it as such." This document is under seal. The second is a letter addressed "To Whom It May Concern" in which Michael Dixon "certif[ies] that he is responsible for authorization of the Arms Export Control Act and has been delegated the power to do so under Executive Order 11958, 42 FR 4311, as amended, and further certif[ies] that the described items are "defined by the ITAR as a defense

article of a nature described on the USML...." This letter is not sworn or notarized, is undated, and bears no seal. It does not state whether the item (TWT) was on the list during the time charged in the indictment. The cited authority for the purported delegation, Executive Order 11958, does not reflect a delegation to a Managing Director of the Directorate of Defense Trade Controls, let alone to an Acting Managing Director, of the powers under the Act.

First, the letter does not state whether this TWT was a defense article at the time of the indictment (March 25-May 6, 2004). In United States v. Pinto-Mejia, 720 F.2d 248 (2nd Cir. 1983), the government offered a certificate purporting to show that a seized vessel was stateless at the time it was boarded by the Coast Guard and found to hold marijuana:

> The Certificate, which does not identify the "Maritime Authority" that apparently revoked the RICARDO's registration, also does not state when that Authority took its action, and there is nothing to indicate that the finding of grounds for expiration was not made after the Coast Guard intercepted the RICARDO and inquired as to its registration. If the Maritime Authority's action did precede the Coast Guard's involvement with the RICARDO, one might expect the Certificate to contain a plain statement that the RICARDO was unregistered in Venezuela on June 27 when it was boarded by the Coast Guard. The absence of such a straightforward statement and the silence of the Certificate as to the date of the Authority's action are circumstances suggesting that the Certificate lacks the trustworthiness necessary to support its admission as proof that the RICARDO was stateless on June 27.

Id. at 258 [emphasis in original]. The court, invoking relevancy and FRE 803(8) grounds, concluded that "the Certificate was improperly received by the district court to show the RICARDO's statelessness." Id.

As in Pinto-Mejia, the letter here does not answer the question whether this TWT was a defense article at the time charged. One notes that TWTs are not specifically named in the paragraph of the Munitions List referenced in the attached letter, namely Category XI( c) which addresses "Components, parts, accessories, attachments, and associated equipment specifically

designed or modified for use with the equipment in paragraph (a) and (b) of this category, except for such items as are in normal commercial use." Since defense articles are not particularized in the USML, the regulations make express provision for "[a]n article or service [to be] designated or determined <u>in the future</u> to be a defense article..." 22 CFR 120.3 [emphasis added], and also contemplate that "[a] determination that an article does not have predominant civil applications shall be made by the Department of State, in accordance with this subchapter, <u>on a case-by-case basis</u>...." 22 CFR 120.4(d)(1) [emphasis added]. (Indeed, as was developed during trial and, with the dismissal of count 2, now must be stricken, the initial determination relating to whether Vicor's power converters were defense articles was made in 2003, almost a generation after the development of the converters in the early 1980s.) Thus, the question of <u>when</u> the determination was made that this particular TWT was included under the broad description of Category XI( c) needed to be answered and, conspicuously, was not in the letter of Acting Managing Director Dixon. Under <u>Pinto-Mejia</u>, and for identical reasons, the exhibit should again be barred.

 Second, no witness was presented to answer the question whether this TWT was regulated at the time relevant to count 1. After <u>Crawford v. Washington</u>, 124 S. Ct. 1354 (2004), documents may be barred by the Confrontation Clause if: (1) the document is offered against the defendant, (2) its author does not testify at trial, and (3) the document constitutes "testimonial" hearsay. Here, the document is certainly testimonial, and defendant is unable to confront it to ask the question it leaves unanswered: was export of this TWT regulated at the times relevant to count 1? To the extent the Court plans to tell the jury that it is simply up to

them to make of the document what they will, the Court is permitting the jury to find a fact not offered in the evidence and for which defendant was denied his right of confrontation.

Under Crawford, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." 124 S. Ct. at 1374.

Third, the letter does not satisfy Fed.R.Evid. 803(8)(A) as it was prepared for purposes of litigation. As noted in United States v. Stone, 604 F.2d 922, 925 (5th Cir. 1979), Rule 803(8)(A) "is designed to allow admission of official records and reports prepared by an agency or government office for purposes independent of specific litigation."

Fourth, the certificate does not satisfy Rule 902. Among other reasons, the letter, being unsealed, was not accompanied by a sealed document "certif[ying] under seal that the signer has the official capacity...," here the delegation of presidential power to designate defense articles. Rather, Acting Director Dixon himself offered, unsworn, that he has the delegation of presidential power. He cites Executive Order 11958, which reflects delegation to the Secretary of State, not to a Managing Director of the Directorate of Defense Trade Controls, let alone to an Acting Managing Director. This exhibit satisfies the requirements of neither 902(1) nor (2).

Fifth, admission of the letter, which does not state whether TWT was a defense article at the time of the indictment (March 25-May 6, 2004), is unfairly prejudicial without being probative, in violation of FRE 403.

For all of these reasons, defendant asks the Court to bar the certificate and accompanying letter.

2. <u>Rule 29</u>

Defendant moves for judgment of acquittal, on the grounds that there is no admissible evidence that this TWT presented at trial was a defense article at the time of the charged conspiracy, that there was no evidence of a completed agreement, and that there was no evidence of an overt act.

JOHN CHU
By his attorney,

*/s/ Charles P. McGinty*

Charles P. McGinty
B.B.O. #333480
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA  02110
Tel: 617-223-8061

### CERTIFICATE OF SERVICE

I, Charles P. McGinty, hereby certify that a true copy of the above document was served upon Assistant United States Attorney Gregory Moffatt by delivery on September 12, 2005.

Charles P. McGinty
